PARDON T. DIX, PLAINTIFF, *v.* FRANKLIN SHAVER, DEFENDANT.

*Offer — who may take advantage of it — acceptance of, necessary — Agreement to locate railroad on particular line — when against public policy.*

The defendant, with others, signed a paper by which, in consideration of one dollar to him paid by the Lake Ontario Shore Railroad Company, and in consideration that the company should locate its road as therein specified, he agreed, when the road should be graded, to pay the sum set opposite to his name. At the time of his signing, the company had surveyed different routes, but had not as yet located the road; subsequently the property and franchises of the company were sold under a mortgage foreclosure, and conveyed to a new company, which subsequently consolidated with still another company. By one of the two latter companies the road was located and graded as designated in the agreement.

In an action by the receiver of the last company to enforce the agreement; *held*, that the paper was merely an offer on the part of the defendant, which could be retracted at any time before acceptance, and that, as the company named therein had never accepted the same, there was no consideration therefor, and that the same could not be accepted or enforced by the new company, between which and the defendant there was no privity.

*Held*, further, that, even if there were any consideration for the agreement, it could not be enforced, as it was void as against public policy, as only the route most advantageous to the public should have been selected.

MOTION by plaintiff for a new trial on exceptions taken at the Niagara Circuit, and ordered to be heard at the General Term in the first instance.

The action was brought by the plaintiff as the assignee of the Lake Ontario Shore Railroad Company and the Rome, Watertown and Ogdensburgh Railroad Company to recover the sum of one hundred dollars set opposite the name of the defendant, upon

a subscription paper signed by the defendant and others, of which the following is a copy : " In consideration of one dollar to each of us in hand paid by the Lake Ontario Shore Railroad Company, the receipt whereof is hereby acknowledged, and also in consideration that the said company shall, and do locate the Lake Shore railroad on a line running from a point near the old graveyard in Wilson, easterly and north of James Van Horn's brick barn in Newfane, in Somerset, and for other and sufficient valuable considerations, I, the undersigned, do hereby covenant and agree that I will pay to the said Lake Ontario Shore Railroad Company the sum set opposite my name, payable when said road is graded, on demand, witness my hand and seal this 15th day of January, A. D., 1872." At the time when the paper was signed and delivered to the Lake Shore Railroad Company, the company had not located its route between the points mentioned in the paper. It had surveyed three routes running south of Van Horn's barn, and the object of the subscription was to induce the company to adopt a route north of that point; no consideration was in fact paid, after the delivery of the paper and before the part of the railroad referred to in the subscription paper was constructed or graded ; the property and franchises of the company were sold under a judgment foreclosing a mortgage executed by said company, and the same were conveyed by sheriffs' deed dated, 22d September, 1874. Subsequently a new corporation, known as " The Lake Ontario Railroad Company," was organized under chapter 430 of the Laws of 1873, to complete, the railroad so begun by the Lake Ontario Shore Railroad Company. The latter company was afterwards consolidated with " The Rome, Watertown and Ogdensburgh Railroad Company," under the name of that company. By one of these latter companies the road was graded and completed in 1875 or 1876, and is now operated its entire length. That portion of the road between the points named in the subscription paper is located north of Van Horn's brick barn. These facts appearing at the trial, the plaintiff was nonsuited, on the ground that the defendant's subscription was void for want of consideration.

*Farnell & Burrell*, for the plaintiff. The subscription is a good and valid contract. The subscription and proof show an *implied*

*request* to the railroad company to locate the road on a particular route, and upon the faith of it the company expended money in making a new survey, and complied with the request by locating the road according to the condition. (*Barnes* v. *Perine*, 12 N. Y., 18; *Trustees of First Baptist Society* v. *Robinson*, 21 id., 234; 48 How., 414; 9 Barb., 202; *The First Religious Society in Whitestown* v. *Store*, 7 John., 112; *McAuley* v. *Billinger*, 20 id, 89; *Barnes* v. *Perine*, 15 Barb., 240; *The Richmondville Sem.* v. *Brownell*, 37 id., 535; *Hutchinson* v. *Smith*, 46 id., 235; *Beardsley* v. *Davis*, 52 id., 159; *The Wayne and Collegiate Institute* v. *Smith*, 36 id., 583; *L'Amoreaux* v. *Gould*, 7 N. Y., 349; *Burrell* v. *Root*, 40 id., 496, 499; *Eno* v. *Woodworth*, 4 id., 249· *Giles* v. *Bradley*, 2 Johnson's Cases, 253).

*John T. Murray*, for the defendant. The subscription being conditional that the company should locate on the particular north line, "and north of James Van Horn's brick barn, in Newfane," the same was void as contrary to public policy. (*Butternuts & Oxford Turnpike Co.* v. *North*, 1 Hill, 518; *Macedon & Bristol Plankroad Co.* v. *Snediker*, 18 Barb., 317; *Fort Edward & Fort Miller Plankroad Co.* v. *Payne*, 15 N. Y., 583).

SMITH, J.:

The judge, at the Circuit, was clearly right in holding that there was no consideration for the defendant's subscription. It was a mere offer on his part, which he was at liberty to retract at any time before any act on the part of the company indicating an acceptance of the offer, and constituting a good consideration for the defendant's promise. No such act was performed by the company to which the offer was made. Had the company built and operated the road upon the route specified in the subscription paper, we incline to the opinion that it might have been inferred, in the absence of proof to the contrary, that they did so at the request of the subscribers to the paper, as an acceptance and performance of the stipulated conditions; and such action would have furnished a sufficient consideration. (*The Wayne & Collegiate Institute* v. *Smith*, 36 Barb., 576; *Beardsley* v. *Davis*, 52 id., 159.) But, so far as appears, the company to which the offer was made

did nothing of the kind. It was divested of its property and franchises by the foreclosure sale in 1874. The grading and completing of the road and, so far as appears, the locating of the route between the points specified in the subscription paper were done by the new company. Between that company and the defendant there was no privity. The defendant's offer was not made to the new company. The new company did not acquire the interest of the original company in the subscription paper. It succeeded to such property only, of the original company, as was covered by the mortgage and sold on the foreclosure.

We are also of the opinion that the nonsuit was proper, for the reason that the agreement, even if there were a consideration to support it, was against public policy. It does not appear that the subscribers were stockholders in the company, and they were not bound to take stock. If their agreement had been a subscription for stock, conditioned upon the adoption of a particular route, it seems that it would have been void, upon the principle laid down in *Butternuts & Oxford Turnpike Co.* v. *North* (1 Hill, 518); *Macedon & Bristol Plankroad Co.* v. *Snediker* (18 Barb., 317); and *Fort Edward & Fort Miller Plankroad Co.* v. *Payne* (15 N. Y., 583).

The statute of 1850 (chap. 140), under which the Ontario Lake Shore Railroad Company was organized, appears to be identical in policy with the acts under which the several cases above cited arose, so far as the point in question is concerned. Public policy requires that, in locating a railroad, as well as a turnpike or a plankroad, between given terminal points, the route most advantageous to the public should be adopted. But if the courts should uphold agreements by persons not proposing to take stock to pay a bonus, in case one of the several rival routes is selected, the interests, not only of the public but of the stockholders, might be greatly prejudiced.

The motion for a new trial should be denied, and judgment ordered for the defendant on the non-suit.

Present — TALCOTT, P. J., SMITH and HARDIN, JJ.

New trial denied, and judgment ordered for the defendant on the nonsuit.