Halsey K. Smith, as Substituted Trustee under the Last Will and Testament of Samuel Clark, Deceased, Plaintiff, *v.* Philip Wagner et al., Defendants.

(Supreme Court, New York Special Term, February, 1919.)

Foreclosure — mortgages — personal liability of executors executing extension agreement — bond — pleading — Statute of Limitations.

In an action to foreclose a mortgage dated in 1890 it appeared that the defendant W., while the owner of the mortgaged premises and in order to stop the further prosecution of an action to foreclose said mortgage, delivered to the assignee and holder thereof, his collateral bond by which he bound himself to pay $17,000 with interest, which said bond, after reciting the bond and mortgage in suit, provided: " It is expressly understood and agreed by and between the parties hereto that this obligation shall be and remain in full force and effect and in nowise be impaired until the actual payment of said sum and interest. And in case of a sale or transfer of any property embraced in said mortgage, or any other mortgage collateral to this bond, then the said * * * W * * * shall continue liable to pay the sum and interest above secured, unless expressly released and discharged in writing '' by the said assignee or her legal representatives. The premises were conveyed to the defendants B. and P., executors of and trustees under the will of the grantor of their

grantor, and they are now the present owners of the premises. By an agreement under seal in which they were described as executors and trustees, but which was acknowledged by them without the addition of anything to indicate that they acted other than as individuals, they covenanted to pay the principal of the mortgage with interest from November 19, 1910, and to comply with the other conditions of the bond and mortgage in consideration of a five-year extension of the mortgage debt. *Held,* that under said agreement they were personally liable for any deficiency arising upon the sale in foreclosure, and the mere fact that in said agreement they were described as executors of and trustees under the will, did not affect their individual liability, and the plaintiff is entitled as against them to the usual judgment of foreclosure and sale and also to judgment for any deficiency arising upon the sale.

The plaintiff having produced upon the trial from his own possession the bond and mortgage, the written assignment of them and the extension agreement, such possession will be presumed lawful and a claim of the defendant P. that as the extension agreement was not specifically mentioned in the assignment of the bond and mortgage to plaintiff's predecessor in title, the obligation of B. and P. under the extension agreement did not pass to and cannot be enforced by the plaintiff, is untenable, as from the production at the trial of said agreement it will be presumed that it was delivered upon the assignment and delivery of the bond and mortgage to plaintiff's predecessor with intention to transfer to him any and all rights thereunder and that said agreement is lawfully in plaintiff's possession.

In order to give the last sentence of the collateral bond any significance, there should be read into it, that W. should continue liable until expressly released, notwithstanding any act of any subsequent owner that might otherwise and on general principles of law and in the absence of a provision to the contrary, operate to release him, and it was not the intention of the parties that W. should be deprived of the right of pleading, as he has, the Statute of Limitations as a defense and the complaint as to him must be dismissed upon the merits with costs.

Action to foreclose a mortgage upon real property.

Edward S. Clinch, for plaintiff.

William X. Weed (Archer P. Cram, of counsel), for defendant Wagner.

George V. Grainger, for defendant Blohm.

Lewis S. Goebel, Jr. (Bernard P. Ryan and Lorlys Elton Rogers, of counsel), for defendant Papenhausen.

GIEGERICH, J.   The action is to foreclose a mortgage upon real property in New York county and questions are raised as to the liability to a deficiency judgment, if any results, of the defendant Wagner and of the defendants Blohm and Papenhausen.   The material facts, briefly stated, are as follows:   On January 30, 1890, Eva Müller and George Müller, her husband, executed and delivered to John T. Willets, as guardian of Phebe P. Willis, their bond in the penal sum of $34,000 to secure the payment of $17,000, together with a mortgage accompanying the same on the real estate in question.   Neither of the said obligors is a party to this action.   There remains due and unpaid upon such bond and mortgage $16,000, with interest from October 1, 1916.   The bond and mortgage, on or about August 1, 1890, were assigned by the said John T. Willets, as guardian of Phebe P. Willis, to Phebe P. Willis by an instrument in writing executed and delivered on that day and recorded in the office of the register of New York county on August 2, 1890.   The defendant Wagner subsequently became the owner of the mortgaged premises by various mesne conveyances, and while the owner thereof, and in order " to stop " the further prosecution of an action which had been commenced to foreclose the mortgage, executed and delivered his collateral bond to the said Phebe P.

Willis on June 10, 1892, by which he bound himself to pay the sum of $17,000, with interest at the rate of five per cent per annum. The collateral bond recites the bond and mortgage executed by the said Eva Müller and George Müller, her husband, and contains the following provisions: " It is expressly understood and agreed by and between the parties hereto that this obligation shall be and remain in full force and effect and in nowise be impaired until the actual payment of said sum and interest. And in case of a sale or transfer of any property embraced in said mortgage, or any other mortgage collateral to this bond, then the said Philip Wagner shall continue liable to pay the sum and interest above secured, unless expressly released and discharged in writing by the said Phebe P. Willis or her legal representatives." The defendant Wagner and Anna Elizabeth Wagner, his wife, conveyed the mortgaged premises to Herman H. Blohm by deed, bearing date June 10, 1892, and recorded in the office of the register of New York county on June 17, 1892. Herman H. Blohm and Meta H. Blohm, his wife, conveyed the premises to Sidney Scharlin by deed, bearing date December 11, 1905, and recorded in the office of the register of New York county on December 16, 1905. Sidney Scharlin and Sarah Scharlin, his wife, conveyed the premises to Meta Blohm and Henry Papenhausen, executors of and trustees under the last will and testament of Herman H. Blohm, deceased, by deed, dated February 3, 1910, and recorded in the office of the register of New York county on February 4, 1910, who ever since have been the owners of the mortgaged premises. On November 19, 1910, while they were such owners, the defendant Meta Blohm, as executrix, and the defendant Henry Papenhausen, as executor of and trustees under the

last will and testament of Herman H. Blohm, deceased, made with the Lawyers Title Insurance and Trust Company, which then owned the guaranteed bond and mortgage and the collateral bond, an agreement under seal in the recitals of which they are described as executors and trustees. They executed and acknowledged the agreement, however, in their respective names without adding anything to indicate that they acted other than in their individual capacities. The extension agreement recites the bond and mortgage made by the Müllers and that $16,000, with interest from November 19, 1910, was then owing thereon. By the terms of the agreement the defendants Blohm and Papenhausen jointly and severally covenanted and agreed to pay said principal sum and interest and to comply with all the other terms and conditions of the said bond and mortgage in consideration of the extension to November 19, 1915, of the time of payment of said principal indebtedness then owing upon and secured by the said bond and mortgage. The plaintiff has since, by various mesne assignments, become and still is the owner and holder of the bond and mortgage so executed by the Müllers, and he is also the holder of the collateral bond executed by the defendant Wagner. Two distinct questions are presented. One is whether the defendant Wagner is liable to a personal judgment if any deficiency results on the sale of the mortgaged premises, and, second, whether the defendants Blohm and Papenhausen are so liable. I will first discuss the liability of the defendants last named. The plaintiff claims that those defendants by executing the extension agreement above mentioned made themselves individually liable for the payment of the mortgage debt and for any deficiency judgment that may result from the sale of the mortgaged premises. On the other hand,

it is argued on behalf of those defendants that as they were the owners of the mortgaged premises in their representative capacities, and as the contract in its designation of the parties purports to be made by them in their representative capacities, they should not be held liable individually upon an agreement which they claim was solely in the interest of and for the benefit of the estate they represented and still represent. The same point was made in *Olin* v. *Arendt,* 27 Misc. Rep. 270, and decided adversely to the contention of the executors. In that case the testator, Lipman, was not personally liable for the mortgage debt, but it was a lien on his property. The executors of his will executed an agreement under seal, whereby, in consideration of an extension of time for the payment of the mortgage debt, they covenanted with the mortgagee that they would pay the debt. The court, at page 271, said: " In considering the question of individual liability, it must be borne in mind that the testator Lipman was not liable on the bond, or for any deficiency which might arise from a sale in foreclosure. While an executor may not be liable personally on a contract made by him as such, relating exclusively to matters of the estate, and in which the executor has no personal interest, still outside of such matters, when he contracts even as executor, an individual liability results. He cannot burden estate assets by such agreements, regardless of the question as to reimbursement on an accounting, (*Pinney* **v.** *Administrators of Johnson,* 8 Wend. 500; *Chouteau* v. *Suydam,* 21 N. Y. 179; *Schmittler* v. *Simon,* 101 id. 554; *Glenn* v. *Burrows,* 37 Hun, 602; *Foland* v. *Dayton,* 40 id. 563.) I am of opinion that the defendants executors and executrix are personally liable for any deficiency arising by virtue of the contract made by them." In *Smith* v. *Peyrot,* 201 N. Y.

210, the court, in discussing the individual liability of executors on contracts made by them, even though for the benefit of the estate they represent and in their representative capacities, at page 215, said: "Although the plaintiff knew the defendant was assuming to act purely as executor, this action was properly brought against the defendant personally. The latter had no power to bind the estate by such a contract. ' The general rule is well settled in this state that executors or trustees cannot by their executory contracts, although made in the interest and for the benefit of the estate they represent, if made upon a new and independent consideration, bind the estate and thus create a liability not founded upon the contract or obligation of the testator ' (*O'Brien* v. *Jackson,* 167 N. Y. 31, 33; *Dodd* v. *Anderson,* 197 id. 466; *Ferrin* v. *Myrick,* 41 id. 315)." The same rule was laid down in *Decillis* v. *Mascelli,* 152 App. Div. 304, 306, and *Metropolitan Trust Co.* v. *Truax,* 154 id. 442. The mere fact that the defendants are described in the extension agreement as executrix and executor of and trustees under the last will and testament of Herman H. Blohm, deceased, does not affect their individual liability thereon. As was said in *Schmittler* v. *Simon,* 101 N. Y. 554, above cited (pp. 558, 559) : " The cases are very numerous to the effect that the addition of an official character, to the signatures of executors and administrators, in executing written contracts and obligations has no significance, and operates merely to identify the person and not to limit or qualify the liability. Thus it was held in *Pinney* v. *Administrators of Johnson* (8 Wend. 500) that a bond given by administrators in their representative capacity to a creditor for a debt of their intestate, was the individual obligation of the administrators and enforcible against them *de bonis propriis* only; that

the description of the obligors in the bond as administrators and their promise in that character was surplusage, and they were chargeable upon such a bond only in their personal capacity (see also *Gould* v. *Ray,* 13 Wend. 633.)    Parsons on Bills and Notes (vol. 1, p. 161) lays down the rule that ' an administrator or executor can only bind himself by his contracts; he cannot bind the assets of the deceased.    Therefore, if he make, indorse or accept negotiable paper, he will be held personally liable, even if he adds to his own name the name of his office.    Signing a note, for example, 'A, as executor of B,' for this will be deemed only a part of the description or will be rejected as surplusage.'    To similar effect are *Pumpelly* v. *Phelps* (40 N. Y. 59), *Taft* v. *Brewster* (9 Johns. 334), *Forster* v. *Fuller* (6 Mass. 58), *Hills* v. *Banister* (8 Cow. 31), *Thatcher* v. *Dismore* (5 Mass. 299), *Cornthwaite* v. *First Nat. Bank* (57 Ind. 268).''    Another point made in behalf of the same defendants is that there was no consideration for the extension agreement.    As such agreement was under seal a consideration is to be presumed, unless the contrary is shown.    Code Civ. Pro. § 840; *Home Insurance Co.* v. *Watson,* 59 N. Y. 390, 395; *Howie* v. *Kasnowitz,* 83 App. Div. 295, 296.    On behalf of the defendant Papenhausen the claim is made that as the extension agreement was not specifically mentioned in the assignment of the bond and mortgage by the Lawyers Title Insurance and Trust Company to Charles H. Clark, plaintiff's predecessor trustee, the obligation of the defendants Blohm and Papenhausen under the extension agreement did not pass to and cannot be enforced by the plaintiff.    On the trial the plaintiff produced from his possession the bond and mortgage, the written assignment of them and the extension agreement.    Possession of these is presumed

to be lawful. *Boardman* v. *Lake Shore & Mich. S. R.,* 84 N. Y. 157, 177; Wigm. Ev. § 2515; 31 Cyc. 933; 1 Jones' Commentaries on Evidence, Horwitz, § 74; Abbott's Proof of Facts (3d ed.) Lincoln, 774, 775. It is a well established rule that title to a bond, to a mortgage on real estate or to any instrument in writing passes by the delivery of the instrument, and that no formal written transfer is necessary. *Thurber* v. *Chambers,* 66 N. Y. 42, 49; *Strause* v. *Josephthal,* 77 id. 622; *Liberty Wall Paper Co.* v. *Stoner W. P. Mfg. Co.,* 59 App. Div. 353; affd., 170 N. Y. 582; *Barnett* v. *Prudential Ins. Co.,* 91 App. Div. 435, 437; *Levy* v. *Louvre Realty Co.,* 222 N. Y. 14, 20. It is also well settled that the assignment of the debt carries with it the security therefor, even though such security be not formally transferred in writing. 27 Cyc. 1286, 1287, 1288, and cases cited. It must be presumed, therefore, from the production of the extension agreement by the plaintiff at the trial that such agreement was delivered at the time of the assignment and delivery of the bond and mortgage to the plaintiff's predecessor trustee, with the intention to transfer to the latter any and all rights thereunder, and that such agreement was lawfully in plaintiff's possession. My conclusion is, consequently, that the defendants Blohm and Papenhausen are individually liable for the deficiency judgment, if any results on the sale of the mortgaged premises. Taking up now the question of the personal liability of the defendant Wagner, it is to be observed that the provisions of the collateral bond above set forth are that his obligation shall remain in force until actual payment of the debt, and that in case of a sale or transfer of any of the mortgaged property he shall continue liable unless expressly released in writing. I am of the opinion that, taking

these provisions as a whole, it should be held that the thing that was contemplated by the parties and that this agreement was made to protect against was an implied release of Wagner, which might result as a consequence of some future extension of the mortgage debt made by agreement between some subsequent owner of the property and the holder of the mortgage. To guard against this result the collateral bond provided that notwithstanding a sale or transfer of the mortgaged property and by implication any acts of the new owners Wagner should still remain liable until expressly released. The parties must have had something in mind that is not expressed in the language of the agreement. If we take the words of the last sentence literally as they are written, we have merely the statement that in case of a sale or transfer of the mortgaged property Wagner should continue liable. But he would continue liable anyway, notwithstanding such sale and transfer, unless his liability was terminated by some act of the new owner. Since we have to read something into this provision to give it any significance, I think we should read into it the thing that is most prominently and naturally suggested from the language employed, and that is that Wagner should continue liable until expressly released, notwithstanding any act of any subsequent owner that might otherwise and on general principles of law and in the absence of a provision to the contrary operate to release him. I do not think, however, that we should go so far as the learned counsel for the plaintiff urges, and hold that the provisions quoted amount in effect to an agreement on Wagner's part not to interpose the defense of the Statute of Limitations. If that had been the meaning of the parties more suitable language could easily have been employed, either by making

express reference to the Statute of Limitations, or by using language that would indicate that the Statute of Limitations was in contemplation. The argument made on behalf of the plaintiff seems further to imply also that, even though the agreement should not be treated as one binding Wagner not to plead the Statute of Limitations, the same effect, so far as the present situation is concerned, results from the fact that Wagner's liability was renewed on each occasion when a subsequent owner made any payment of interest or principal on the mortgage debt. If such payments had that result, so that the Statute of Limitations had to be counted as running only from the time of the last of such payments, Wagner would be liable, but I cannot find in the language employed by the parties anything to justify such a construction. Indeed, in *Mutual L. Ins. Co.* v. *United States Hotel Co.*, 82 Misc. Rep. 632, where the question was involved of the availability of the Statute of Limitations as a defense to one who had given a collateral bond, the agreement there in question employed not only the words we have in the present case, but then went on as follows: " and in case of any agreement or stipulation between the owner or owners of said mortgaged property and the said obligees, extending the time or modifying the terms of the payment above stated, then the above mentioned obligors shall continue liable to pay the sum above secured according to the tenor of any such agreement, unless expressly released and discharged in writing by the above named obligees." In that case, because of the provision that the obligors should continue liable " according to the tenor " of any such subsequent extension agreement, there was much better ground for holding in accordance with the argument above set forth on behalf of the

plaintiff in this case, but nevertheless the court there decided that the obligors had a right to plead and rest upon the protection of the Statute of Limitations. The conclusion I have reached that it was not the intention of the parties to the agreement in question that the defendant Wagner should be deprived of the right of pleading the Statute of Limitations renders it unnecessary to determine whether or not such an agreement, made in advance and in unlimited terms, would be enforcible. In *Shapley* v. *Abbott,* 42 N. Y. 443, 452, the court said: "A party may, undoubtedly, without trenching upon public policy, waive the defense of usury, or of the statute of frauds or of the statute of limitations, by omitting to set up the defense when sued. And he may waive his statute exemption by turning out exempt property when the officer comes with the execution; but no case has occurred to me in which a party can, in advance, make a valid promise that a statute founded in public policy shall be inoperative," and in *Watertown National Bank* v. *Bagley,* 134 App. Div. 831, 834, the court said: "Probably an agreement made at the inception of the liability to the effect that the Statute of Limitations will never be interposed as a defense would be flying in the face of the statute." But, as said before, it is unnecessary to attempt to pass upon the question whether such an agreement not to plead the statute, if made, would be enforcible, because I do not think it should be held that the parties in this case made such an agreement. The answer of the defendant Wagner pleads other defenses beside the twenty-year Statute of Limitations; but those defenses do not seem to be insisted upon in the brief presented on his behalf and need not be considered in any event because of the conclusion I have reached that the defense of the Statute of Limitations is good. My con-

Supreme Court, February, 1919. [Vol. 106.

clusion is that the plaintiff is entitled to the usual judgment of foreclosure and sale and also to judgment for any deficiency that may arise upon the sale of the mortgaged premises against the defendants Blohm and Papenhausen individually, with costs and an additional allowance of $200. The judgment should also provide that the complaint be dismissed as to the defendant Wagner upon the merits, with costs. The plaintiff only has submitted requests for findings, and they are accompanied by an admission of service of the attorneys for certain defendants. The parties were requested upon the final submission of the case to submit with their papers their respective requests to find. I assume that the failure of the defendants to do so is due to oversight and they are therefore given three days after the publication hereof within which to submit such requests. The papers so far received by me have, in the meantime, been returned to the clerk, to whom the defendants' requests should be presented, with proof of service.

Ordered accordingly.